ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

GERMAN CESPEDES, FRANCISCO PEREZ, and MARCOS
SUAREZ,

Plaintiffs,

**Docket No.:**

-against-

A&E REAL ESTATE MANAGEMENT, LLC.,
DOUGLAS EISENBERG, and NANCY GONZALEZ,

**JURY TRIAL
DEMANDED**

Defendants.

-------------------------------------------------------------------------X

## COMPLAINT

1.      Plaintiffs German Cespedes ("Cespedes"), Francisco Perez ("Perez"), and Marcos Suarez

("Suarez") (collectively "Plaintiffs") by their attorneys, Robert Wisniewski P.C., as and

for their Complaint against A&E Real Estate Management, LLC ("A&E" or the

"Corporate Defendant"), Douglas Eisenberg ("Eisenberg"), and Nancy Gonzalez

("Gonzalez") (collectively the "Individual Defendants") (Corporate Defendant and

Individual Defendants are collectively referred to as the "Defendants") and state as

follows:

## NATURE OF THE ACTION

2.      Plaintiffs bring this action to recover damages for unpaid wages, unpaid promised wages,

unpaid overtime wages, quantum meruit, liquidated damages and reasonable attorneys'

fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) ("FLSA"), and the various regulations and policy statements promulgated by the U.S. Department of Labor and codified in Title 29 of the Code of Federal Regulations, 29 C.F.R. 500 et seq.; the New York Labor Law, including, but not limited to, Articles 6 and 19 ("New York Labor Law" or "NYLL"), and the various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 135-146; and the common law of the State of New York.

3.      Plaintiffs also bring this action against Defendants for their failure to pay Plaintiffs for sick days in violation of New York City's Earned Sick Time Act, Title 20 of Administrative Code section 20-911 et seq. ("New York City's Earned Sick Time Act").

4.      Plaintiffs also bring this action against Defendants for their failure to comply with NYLL § 195(1), which as of February 1, 2011, has mandated that employers, Defendants included, provide annual wage notices during the period of employment of an employee which specifies, among others, the employee's wage rate, the frequency of wage payments, the designated pay day and other information set forth in the statute. Plaintiffs are entitled to maximum statutory damages of $25.00 or $50.00 per week as provided for by NYLL.

5.      Plaintiffs Suarez and Cespedes bring this action individually for Defendants' violation of New York City Administrative Code § 27-2054.

6.      The Corporate Defendants are in the business of residential business management and leasing in New York City.

7.      Plaintiffs were employed by Defendants as superintendents and laborers at various

buildings that Defendants managed.

8.     Plaintiffs were employees of Defendants during the six years immediately preceding the
initiation of this action and have performed labor and services as employees as defined by
the FLSA, NYLL, and the various regulations, policy statements, and wage orders
promulgated thereunder, but Plaintiffs have not received the compensation required by
the FLSA, NYLL, the various regulations, policy statements, and wage orders
promulgated thereunder, and the common law of the State of New York.

9.     As such, Plaintiffs were persons covered by, and/or intended to benefit from, the
provisions of the FLSA and NYLL, the various regulations and wage orders promulgated
thereunder, and/or the common law of the State of New York in respect to their work for
Defendants.

10.    Plaintiffs regularly worked over 40 hours per week for Defendants, but never received
any form of additional compensation for their extra hours worked, either at their regular
rate or at the premium rate for their work in excess of forty hours per week.

## PARTIES, JURISDICTION AND VENUE

11.    At all relevant times herein, Plaintiff Cespedes was and is a resident of the State of New
York, New York County.

12.    At all relevant times herein, Plaintiff Perez, was and is a resident of the State of New
York, New York County.

13.    At all relevant times herein, Plaintiff Suarez was and is a resident of the State of New
York, New York County.

14.    At all relevant times herein, the Corporate Defendant was and still is a foreign limited

liability company duly organized under the laws of the State of Delaware, and presently having its principal place of business at 5 Bryant Park, 1065 6th Ave, New York, NY 10018.

15.     Upon information and belief, at all relevant times herein, Defendant Eisenberg was and is a resident of the State of New York or conducts substantial business and derives substantial revenue from the State of New York.

16.     At all relevant times herein, Defendant Gonzalez was and is a resident of the State of New York or conducts substantial business and derives substantial revenue from the State of New York.

17.     The Court has personal jurisdiction over the Corporate Defendant in that it conducts substantial business and derives substantial revenue from the State of New York.

18.     The Court has personal jurisdiction over the Individual Defendants in that they are citizens and residents of the State of New York and/or conduct substantial business and derive substantial revenue from the State of New York.

19.     The Individual Defendants are owners, majority shareholders, officers, directors, and/or managers of the Corporate Defendant and are individually responsible for unpaid wages under the New York Limited Liability Company Law (**Exhibit 1**).

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this action arises under the FLSA. This Court has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

21.     Defendants are engaged in an enterprise whose annual volume of sales made or business

done is no less than $500,000.00, the activities of which affect interstate commerce in

that the employees of said Defendants produce, sell, handle or otherwise work on goods

that have been moved in or produced for interstate commerce, and Defendants are thus

employers subject to the jurisdiction of the FLSA.

22.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C.

        § 1391(b) because substantial events giving rise to Plaintiffs' claims occurred in this

        district.

## JURY DEMAND

23.     Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

### *Facts Relating to Plaintiff Cespedes' Employment*

24.     Corporate Defendant is a limited liability company that owns a number of apartment

        buildings in New York City, including the buildings located at 370 Ft. Washington Ave

        (the "Ft Washington Building"), 95 Thayer Street (the "Thayer Street Building"), and the

        ninety-six (96) unit apartment located on Sickles Street (the "Sickles Street Building").

25.     On or about December 12, 2012, Plaintiff Cespedes entered into an oral contract with

        Defendants whereby Cespedes would serve as the superintendent for the seventy-five (75)

        unit Ft Washington Building in exchange for a weekly wage of $730 and a one bedroom

        basement apartment free of charge.

26.     Cespedes understood that his weekly wage would cover only 40 hours of work per week.

27.     Pursuant to the oral agreement, Cespedes would work from 9:00 a.m. to 5:00 p.m.,

        Monday through Friday for a total of forty hours per week and would be entitled to paid

holidays and six (6) paid sick days.

28.    Despite the parties' oral agreement, Cespedes was scheduled to work every Monday
       through Friday from 9:00 a.m. until 5:00 p.m. without a lunch break, and every Saturday
       and Sunday from 6:00 a.m. until 11:00 a.m without a lunch break. Plaintiff was also
       required to work on holidays.

29.    As superintendent, Cespedes' regular job duties included, cleaning and maintaining the
       premises, changing locks on apartments, collecting and disposing of trash, removing
       minor building code violations in individual apartments, and accompanying building
       inspectors on walk-arounds of the building.

30.    Cespedes regularly spent an additional 4 hours a day painting, plastering, and renovating
       entire apartments, all at Defendants' insistence.

31.    Cespedes would not leave work until his renovation projects were complete, usually
       around 8:00 p.m. on weekdays and around 4:00 p.m. on the weekends.

32.    Cespedes would also spend around 3 hours per week responding to tenant emergencies.

33.    As such, Plaintiff Cespedes regularly worked about 78 hours per week.

34.    Defendants promised to issue work orders with specific renovation jobs and fully
       compensate Plaintiff for each job he completed according to the price set by Plaintiff.

35.    After numerous jobs, Cespedes resubmitted the work orders to Defendants with the
       amounts owed to him for each renovation.

36.    Defendant Gonzalez refused to pay Cespedes the amounts he requested and stated that
       she would determine the price since Plaintiff was not licensed.

37.    During his employment with Defendants, Cespedes performed approximately $23,000

worth of renovations and documented each job on Defendants' work orders.

38.    Despite Defendants' promise to fully compensate Cespedes for the renovations,

Defendants only paid Cespedes approximately $5,500.

***Facts Relating to Defendants' Failure to Pay Plaintiff Cespedes Proper Wages***

39.    Despite regularly working well over 40 hours per week, Defendants paid Cespedes

Cespedes in checks ranging from $521.95 to $555.28 regardless of how many hours he

worked. These checks were not accompanied by any stubs that would indicate how

Cespedes was paid, whether he was paid by the hour or per apartment unit, and whether

taxes and social security, Medicaid and FICA payments were being deducted from

Cespedes' pay.

40.    Cespedes never received any form of additional compensation for his extra hours, either

at his regular rate or at the premium rate for the work he performed in excess of forty

hours per week.

41.    As described above, Defendants also failed to fully compensate Cespedes for renovations

as promised.

42.    Defendants failed to pay Cespedes approximately $17,500 for renovation jobs he

performed on Defendants' apartments from January 2012 until September 2016.

***Facts Relating to Defendants' Breach of the Oral Agreement With Cespedes***

43.    In or around June 2015, Cespedes fell ill and was out of work for two weeks.

44.    During that time, Defendants willfully failed to compensate Cespedes for his paid sick

days under the parties' oral agreement or under New York City's Earned Sick Time Act.

45.    Moreover, during his employment with Defendants, Plaintiff was required to work during

the holidays.

46.    Defendants knew that these practices breached the parties' oral agreement and New York

City Law, and that their conduct was intentional and willful.

47.    Plaintiff Cespedes was terminated on or about September 29, 2016.

***Facts Relating to Plaintiff Suarez' Employment***

48.    On or about January 1, 2013, Plaintiff Suarez entered into an oral contract with

Defendants whereby he agreed to work as superintendent for the ninety-six (96) unit

Sickles Building in exchange for a specific weekly wage of $541.00 and a one bedroom

basement apartment free of charge. Plaintiff was also entitled to three (3) paid sick days.

49.    Plaintiff understood that his weekly wage would only cover 40 hours of work per week.

50.    Pursuant to the oral agreement, Suarez would work from 9:00 a.m. until 5:00 p.m.,

Monday through Friday for a total of forty hours per week.

51.    Despite the parties' oral agreement, Suarez was required to work every Monday through

Friday from 6:30 a.m. until 4:00 p.m. without a lunch break and every Saturday and

Sunday from 6:00 a.m. until 11:00 a.m. without a lunch break. Suarez was also required

to work on holidays.

52.    On or about May 29, 2015, Defendants orally agreed to pay Suarez $13.95 per hour for

his Regular Work.

53.    As superintendent, Suarez' regular job duties included, cleaning and maintaining

the premises, changing locks on apartments, collecting and disposing of trash, removing

minor building code violations in individual apartments, and accompanying building

inspectors on walk-arounds of the building.

54.  Suarez regularly spent an additional 3 hours a day painting, plastering, and renovating entire apartments, all at Defendants' insistence.

55.  Suarez would not leave work until his renovation projects were complete, usually around 7:00 p.m. on weekdays and around 2:00 p.m. on the weekends.

56.  Suarez would also spend around 3 hours per week responding to tenant emergencies.

57.  As such, Plaintiff Suarez regularly worked a minimum of 65 hours per week.

58.  Defendants promised to compensate Suarez for his renovation work by issuing work orders with specific jobs and paying Suarez the full value of each job.

59.  When Suarez resubmitted the work orders detailing the renovation jobs to Defendant Gonzalez and requested payment, she refused to pay him the full value of each renovation. Gonzalez would often say "You are not a licensed professional."

60.  Suarez billed Defendants approximately $6,000 for his services, for which Defendants paid only $3,000.

***Facts Relating to Defendants' Failure to Pay Plaintiff Suarez Proper Wages***

61.  Despite regularly working well over 40 hours per week, Defendants paid Suarez in checks ranging from $241.80 to $500.00 regardless of how many hours he worked. These checks were not accompanied by any stubs that would indicate how Suarez was paid, whether he was paid by the hour or per apartment unit, and whether taxes and social security, Medicaid and FICA payments were being deducted from Suarez' pay.

62.  Suarez never received any form of additional compensation for his extra hours, either at his regular rate or at the premium rate for the work he performed in excess of forty hours per week.

63.   As described above, Defendants also failed to fully compensate Suarez for renovations as promised.

64.   Plaintiff is owed approximately $3,000 for the renovation work he performed on Defendants' apartments.

***Facts Relating to Defendants' Breach of the Oral Agreement With Suarez***

65.   Despite the parties' oral agreement, Plaintiff Suarez was forced to work on Holidays.

66.   Defendants knew that these practices breached the parties' oral agreement and New York City Law, and that their conduct was intentional and willful.

67.   Plaintiff Suarez is still employed at Defendants' Sickles Building.

***Facts Relating to Plaintiff Perez' Employment***

68.   On or about December 5, 2012, Plaintiff Perez entered into an oral agreement with Defendants whereby he agreed to work as superintendent for the fifty (50) unit Thayer Street Building in exchange for a specific weekly wage of $500.00 and a one bedroom basement apartment free of charge.

69.   Plaintiff understood that his weekly wage would only cover 40 hours of work.

70.   Pursuant to the oral agreement, Perez would work from 9:00 a.m. until 5:00 p.m., Monday through Friday for a total of forty hours per week. Plaintiff was also entitled to paid holidays and three (3) paid sick days.

71.   Despite the parties' oral agreement, Perez was required to work every Monday through Friday from 9:00 a.m. until 5:00 p.m. without lunch break, and every Saturday and Sunday from 6:00 a.m. until 11:00 a.m. without a lunch break. Plaintiff was also required to work on holidays.

72.   As superintendent, Perez' regular job duties included, cleaning and maintaining the premises, changing locks on apartments, collecting and disposing of trash, removing minor building code violations in individual apartments, and accompanying building inspectors on walk-arounds of the building.

73.   Perez regularly spent an additional 4 hours a day painting, plastering, and renovating entire apartments, all at Defendants' insistence.

74.   Perez would not leave work until his renovation projects were complete, usually around 8:00 p.m. on weekdays and around 4:00 p.m. on the weekends.

75.   Perez would also spend around 3 hours per week responding to tenant emergencies.

76.   As such, Plaintiff Perez  regularly worked about 78 hours per week.

77.   Defendants promised to issue work orders with specific renovation jobs and fully compensate Plaintiff for each job he completed according to the price set by Plaintiff.

78.   Despite Defendants' promise to fully compensate Perez for each renovation job, Defendants failed to issue a single payment to Plaintiff.

***Facts Relating to Defendants' Failure to Pay Plaintiff Perez Proper Wages***

79.   Despite regularly working well over 40 hours per week, Defendants paid Perez in checks ranging from $359.77 to $373.87 regardless of how many hours he worked. These checks were not accompanied by any stubs that would indicate how Perez was paid, whether he was paid by the hour or per apartment unit, and whether taxes and social security, Medicaid and FICA payments were being deducted from Perez' pay.

80.   Perez never received any form of additional compensation for his extra hours worked, either at his regular rate or at the premium rate for his work in excess of forty hours per

week.

81.     As described above, Defendants also failed to fully compensate Perez for renovations as
        promised.

82.     Defendants failed to pay Perez approximately $5,000 for renovation work he performed
        on Defendants' apartments.

***Facts Relating to Defendants' Breach of the Parties' Oral Agreement With Perez***

83.     Despite the parties' oral agreement, Perez was required to work on Holidays.

84.     Furthermore, Defendants failed to compensate Perez for sick days under the parties' oral
        agreement or under New York City's Earned Sick Time Act.

85.     Defendants knew that these practices breached the parties' oral agreement and New York
        City Law, and that their conduct was intentional and willful.

86.     Perez ended his employment with Defendants in late 2016.

***Facts Relating to Defendants' Violations of NYLL § 195.1***

87.     In accordance with the NYLL §195.1, which is operative as of January, 2011, on an
        annual basis Defendants had to present for signature to each employee a wage notice,
        which had to contain the following wage rate information:  (i) the basis of the employee's
        wage rates, e.g., by the hour, shift, day, week, salary, piece commission or otherwise; (ii)
        the overtime rate of pay, if the employee is subject to overtime regulations;  (iii)  whether
        the employer will claim allowances such as tips, meals, and/or lodging against the
        minimum wage; (iv) the employer's name and any "doing business as" names; (v)
        the employer's address and mailing address, if different; and (vi) the employer's
        telephone number (the "Wage Notice").

88.     Upon hire, Plaintiffs never received and never signed the Wage Notice and never received any other documents which might show the information required by NYLL §195.1.

89.     Defendants were aware or should have been aware that this practice was in violation of NYLL, but continued to willfully engage in this unlawful practice.

90.     Upon information and belief, Defendants continue to violate NYLL §195.1 to date.

*Defendants' Failure to Pay Plaintiffs their Proper Wages was Willful*

91.     Defendants as employers have certain statutory obligations towards employees, including the requirement of paying employees for all hours worked and, where appropriate, at an overtime premium of 150% of their regular rate for each hour worked in excess of 40 and to make, keep and preserve proper payroll records.

92.     Defendants were aware of there requirement to pay Plaintiffs for each hour worked and at an overtime premium of 150% of their regular rate for each hour worked in excess of 40 hours per week.

93.     As such, the various violations of the law which are alleged herein were committed intentionally and/or willfully by Defendants.

94.     Defendants have failed to take any steps to ascertain their duties with respect to the payment of wages to employees.

95.     Defendants willfully and intentionally refused to pay Plaintiffs any compensation for hours worked beyond 40 hours per week.

96.     Defendants wilfully and intentionally refused to pay Plaintiffs at an overtime rate for hours worked beyond 40 hours per week.

*Facts Relating to the Individual Defendants as a Joint Employer*

-13-

97.   At all relevant times herein, the Corporate Defendant was and is controlled by the Individual Defendants.

98.   At all relevant times herein, the Individual Defendants conducted business as the Corporate Defendant.

99.   At all relevant times herein, the Individual Defendants acted for and on behalf of the Corporate Defendant, with the power and authority vested in them as owners, officers, agents, and employees of the Corporate Defendant, and acted in the course and scope of their duty and function as owners, agents, employees, and officers of the Corporate Defendant.

100.   At all relevant times herein, the Individual Defendants directly managed, handled, or was otherwise ultimately responsible for, the payroll and/or payroll calculations and signing or issuing checks for Plaintiffs.

101.   The Individual Defendants  had control over the conditions of employment of Plaintiffs, including their hiring and firing, their work schedules, the rates and methods of payment of their wages, and the maintenance of their employment records.

102.   At all relevant times herein, the Individual Defendants had operational control over the Corporate Defendant.

103.   As a matter of economic reality, Defendants are joint employers of Plaintiffs; and, as a result, Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

### FIRST CLAIM FOR RELIEF
### (FLSA Violations against all Defendants)

-14-

104.   Plaintiffs repeat and reallege each and every allegation previously set forth.

105.   Plaintiffs were persons covered by, and intended to benefit from the provisions of the FLSA in respect to their work for Defendants.

106.   Pursuant to the FLSA, Plaintiffs were entitled to certain regular wages, overtime wages, and other wages, which Defendants intentionally and willfully failed to pay in violation of such law.

107.   Plaintiffs regularly worked more than 40 hours per week but never received any form of additional compensation for the extra hours, either at their regular rate or at the premium rate for the work they performed in excess of forty hours per week.

108.   Accordingly, Plaintiffs seek a judgment for unpaid regular wages, and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiffs, along with an award of liquidated damages, interest, reasonably attorneys' fees and costs, as provided for by the FLSA.

## SECOND CLAIM FOR RELIEF
### (NYLLViolations against all Defendants)

109.   Plaintiffs repeat and reallege each and every allegation previously set forth.

110.   Plaintiffs were persons covered by, and intended to benefit from the provisions of the NYLL in respect to their work for Defendants.

111.   Pursuant to the NYLL, Plaintiffs were entitled to certain regular wages, overtime wages, and other wages, which Defendants intentionally and willfully failed to pay in violation of such law.

112.   Plaintiffs regularly worked more than 40 hours per week but never received any form of

additional compensation for the extra hours, either at their regular rate or at the premium

rate for the work they performed in excess of forty hours per week.

113.   Accordingly, Plaintiffs seek a judgment for unpaid regular wages, and unpaid overtime

wages, such sums to be determined based upon an accounting of the hours worked by,

and wages actually paid to, Plaintiffs, along with an award of liquidated damages,

interest, reasonably attorneys' fees and costs, as provided for by the NYLL.

**THIRD CLAIM FOR RELIEF**
**(Unpaid Promised Wages Pursuant to NYLL against Defendants)**

114.   Plaintiffs repeat and reallege each and every allegation previously set forth.

115.   Plaintiffs' promised wages for each renovation job completed constitutes "wages" within

the meaning of NYLL §190 (1).

116.   Defendants, in withholding promised wages without cause have violated the NYLL.

117.   As a consequence, Plaintiffs are entitled to promised wages for all renovation work.

**FOURTH CLAIM FOR RELIEF**
**(Violations of NYLL §195(1) against Defendants)**

118.   Plaintiffs repeat and reallege each and every allegation previously set forth.

119.   NYLL §195.1 mandates as of January 2011 that each employee employed by Defendants

on an annual basis receive for signature a Wage Notice, which had to contain the

following wage rate information: (i) the basis of the employee's wage rates, e.g., by the

hour, shift, day, week, salary, piece commission or otherwise; (ii) the overtime rate of

pay, if the employee is subject to overtime regulations; (iii) whether the employer will

claim allowances such as tips, meals, and/or lodging against the minimum wage;

-16-

(iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

120. Upon hire, Plaintiffs never received and never signed the Wage Notice and never received any other documents which might show the information required by NYLL §195.1.

121. Defendants were aware or should have been aware that this practice was in violation of NYLL, but continued to willfully engage in this unlawful practice.

122. Upon information and belief, Defendants continue to violate NYLL §195.1 to date.

## FIFTH CLAIM FOR RELIEF
### (Quantum Meruit against all Defendants)

123. Plaintiffs repeat and reallege each and every allegation previously set forth.

124. Plaintiffs performed renovation and construction work and services at Defendants' request and direction.

125. Defendants, by employing Plaintiff, voluntarily accepted Plaintiff's services, and benefitted therefrom.

126. Plaintiffs had a reasonable expectation of payment for each renovation job completed, but Defendants failed to remunerate Plaintiffs for each renovation job Plaintiffs completed.

127. Therefore, Plaintiffs are entitled to payment for the unpaid renovation jobs which constitutes the reasonable value of their services, less amounts actually paid to Plaintiffs, together with an award of interest, costs, disbursements, and attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Violations of New York City's Earned Sick Time Act)

128. Plaintiffs repeat and reallege each and every allegation previously set forth.

-17-

129.   Plaintiffs were persons covered by and intended to benefit from the provisions of New York City's Earned Sick Time Act.

130.   Pursuant to § 20-913, Defendants were required to provide a minimum of one hour of paid sick time for every thirty hours worked by Plaintiffs.

131.   Defendants violated § 20-913 by failing to pay Plaintiffs for their accrued sick time based upon the number of hours they worked.

132.   Plaintiffs seek a judgment for all unpaid sick days, such sums to be determined based upon an accounting of the hours worked by, and the sick time actually paid to Plaintiffs, along with an award of attorneys' fees, interest and costs as provided under the Act.

## SEVENTH CLAIM FOR RELIEF
### Brought Individually by Plaintiffs Suarez and Cespedes
### (Violations of the New York City Administrative Code against Defendants)

133.   Plaintiffs repeat and reallege each and every allegation previously set forth.

134.   New York City Administrative Code § 27-2054 provides that "[n]o person who performs janitorial services for more than one multiple dwelling may service more than sixty-five dwelling units."

135.   Defendants violated the New York City Administrative Code by forcing Plaintiffs Cespedes and Suarez to provide janitorial services to buildings with more than sixty-five dwelling units.

136.   Specifically, Plaintiff Cespedes was required to provide janitorial services at Defendants' Ft. Washington building, which contained 75 units. Plaintiff Suarez was required to provide janitorial services at Defendants' Sickles building which contained 96 units.

137.   Defendants were aware or should have been aware that this practice was in violation of the New York City Administrative Code, but continued to willfully engage in said unlawful practice.

138.   Upon information and belief, Defendants continue to violate said sections of the New York City Administrative Code to date.

139.   As a result of Defendants' violation of New York City Administrative Code, Plaintiffs Cespedes and Suarez are entitled to damages, in an amount determined at trial.

[No More Text On This Page]

-19-

WHEREFORE, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

     (a)  compensatory damages in an amount to be determined at trial;

     (b)  statutory damages of $25.00 or $50.00 per week as provided for by NYLL §195.1 up to $2,500.00 per year or $5,000.00;

     (c)  liquidated damages pursuant to FLSA and NYLL;

     (d)  back pay and front pay;

     (e)  pre-judgment interest;

     (f)  Plaintiffs' costs and reasonable attorneys' fees.

Together with such other and further relief that the Court deems just.

Dated: New York, NY
       March 29, 2018

                       ROBERT WISNIEWSKI P.C.

                       By: /ss/ Robert Wisniewski
                          Robert Wisniewski
                          Robert Wisniewski, P.C.
                          Attorneys for Plaintiffs
                          225 Broadway, Suite 1020
                          New York, New York  10007
                          Tel: (212) 267-2101